OPINION
SHWARTZ, Circuit Judge.
Marie Schaub, her daughter Doe 1, and the Freedom From Religion Foundation (“FFRF”) (collectively, “Appellants”) brought suit under 42 U.S.C. § 1983, alleging that the New Kensington-Arnold School District (“the District”) violates the Establishment Clause by maintaining a monument of the Ten Commandments at its public high school. The District Court granted the District’s summary judgment motion, concluding that the Appellants *473 lack standing and their request for injunc-tive relief is moot. Because Schaub has standing to seek both nominal damages and injunctive relief, and her request for injunctive relief is not moot, we will reverse the District Court’s order dismissing her claims. We will vacate the order dismissing FFRF’s claims to allow the District Court to consider whether Schaub was a member of FFRF at the time the complaint was filed. As to Doe 1, we need not address whether she has standing to obtain an injunction, but conclude that the District Court correctly found that she lacks standing to seek nominal damages, and we will affirm the order granting the District summary judgment with respect to this claim.
I
In 1956, the New Kensington Fraternal Order of the Eagles, a non-profit charitable organization, donated a six-foot granite monument inscribed with the Ten Commandments to be placed on the grounds of Valley High School in New Kensington. The donation was part of a nationwide program spearheaded by the Eagles’ Youth Guidance Committee through which local chapters of the organization donated over 140 such monuments. The Committee believed that troubled young people would benefit from exposure to the Ten Commandments as a code of conduct. In addition to the text of the Ten Commandments, the tablet is adorned with images of an eagle, an American flag, the Star of David, the Chi-Rho symbol, a Masonic eye, and tablets with Hebrew and Phoenician lettering.
The monument is located near the entrance to the high school’s gymnasium, which is accessible from the student parking area via two railed footpaths. Anyone entering the school via these paths passes within 15 feet of the monument. The parties disagree about how closely one must approach the monument in order to read its text.
On March 20, 2012, FFRF, an organization dedicated to promoting separation of church and state, wrote a letter to the Superintendent of the District requesting that the monument be removed. The school board rejected the request. Local media reported on the letter and the school board’s decision. Schaub saw one such story on television, and contacted FFRF through its website. She states that she has “been a member of FFRF since August 2012, when [she] contacted FFRF regarding this lawsuit.” App. 734.[1]
Schaub and Doe 1 live within the New Kensington-Arnold School District. Schaub had visited the high school and come into contact with the monument in the past while taking Doe 1 to a karate event, picking Doe 1 up from a program at the high school swimming pool, and dropping off her sister, whose child attends the high school, to attend events at the school once or twice. In addition, Doe 1 was scheduled to attend the high school beginning in August 2014, and Schaub planned to drive her to school.
*474 Schaub estimates that from the curb, where she would pull over to drop someone off at the gym’s entrance, she could see the monument and make out the title, “The Ten Commandments” as well as the word “Lord,” which are printed in a larger font than the remaining text. App. 820-22. The monument can also be seen from the road on which Schaub and Doe 1 frequently travel.
Schaub did not testify that she ever read the full text of the monument, but said that she walked by it and views it as “commanding” students and visitors at the high school to worship “thy God,” brands her as “an outsider because [she] do[es] not follow the particular religion or god that the monument endorses,” App. 679, and makes her “stomach turn[ ],” App. 824. She wishes to bring up her daughter without religion and “do[es] not want Doe 1 to be influenced by the Ten Commandments monument in front of Valley High School.” App. 680.
Doe 1, who identifies as non-religious, recalls walking past the monument to attend the karate event when she was six or seven years old, and to use the high school swimming pool between third and fifth grade, but “never read it,” App. 684, “was young so [she] didn’t really know what it meant,” App. ■ 687, and “didn’t really pay attention to it.” App. 684. She subsequently “looked at it because [her] mom was [ ] worried about it” and “wanted to see what it was about.” App. 684. Specifically, Doe 1 testified that she reviewed a picture of the monument, and has seen it from the road while being driven to a friend’s house. When asked at her deposition about her reaction to the monument, Doe 1 testified that she “didn’t really feel anything when [she] was young,” arid right now, does not “feel like [she] ha[s] to believe in god, but ... [that] since it’s there in front of a school that they kind of want you to be that way.”[2] App. 864. Appellants concede the record is silent as to whether Doe 1 had this view at the time the complaint was filed.
On September 14, 2012, Appellants filed a complaint in the United States Dis-trict Court for the Western District of Pennsylvania alleging that the presence of the monument on public school property violates the Establishment Clause and seeking declaratory and injunctive relief, nominal damages, and attorneys’ fees.[3] During the pendency of the lawsuit, Schaub and Doe l’s contact and possible contact with the monument continued. Doe 1 attended the eighth grade dinner dance at the high school in May 2014, and she expressed an interest in attending classes at the Northern Westmoreland Career & Technology Center, which is located on the high school campus.
In August 2014, Schaub sent Doe 1 to a different high school, which required her to leave her middle school classmates and attend a school farther from Schaub’s home. Schaub avows that were the monument removed from Valley High School, she would permit Doe 1 to enroll there.
After discovery, the parties filed cross-motions for summary judgment. The District Court held that Appellants lack standing and, in any event, their claim for injunctive relief was moot. The District *475 Court observed that appellate courts require plaintiffs bringing Establishment Clause claims to show “direct, unwelcome contact” with the allegedly offensive display, but noted that the cases tended to concern plaintiffs whose contact with a display was “frequent and regular,” and a necessary result of accessing government services or fulfilling civic obligations. App. 14 (quoting Vasquez v. Los Angeles Cty., 487 F.3d 1246, 1252 (9th Cir. 2007)). As a result, it interpreted these factors as imposing additional elements to show standing, and held that Doe 1 and Schaub “failed to establish that they were forced to come into direct, regular, and unwelcome contact with the Ten Commandments monument.” App. 15 (internal quotation marks omitted). As to Schaub, the District Court found that she had come into contact with the monument just a few times and such exposure was insufficient to confer standing. The District Court also found that she had not shown that her contact was “required” for “necessary matters” or as “part of her regular routine.” App. 16. Furthermore, the District Court read Schaub’s deposition testimony that “it never occur[ed] to [her]” that the monument was wrongful and she “didn’t really think too much about it” when she first saw it to mean that her objections to the monument arose only after FFRF became involved in the controversy, undermining the personal nature of her claims. App. 16.
As to FFRF, the District Court noted that its associational standing was contingent on Schaub’s standing and, because she lacked standing, FFRF also lacked standing. As to Doe 1, the District Court found her claim was more “tenuous” than her mother’s because she did not seem to recollect seeing the monument in person or feeling affronted by it. App. 16-17.
The District Court also found that Doe l’s attendance at a different high school was irrelevant to standing because standing must exist at the time a complaint was filed, and her attendance at a different school occurred at a later time. The District Court viewed her enrollment at a different school, however, as .mooting the request for injunctive relief because the decision to enroll Doe 1 at another school removed any threat of future injury from alleged exposure to the monument. Schaub, Doe 1, and FFRF appeal.
II[4]
A
Standing and mootness are two distinct justiciability doctrines that limit our *476 jurisdiction to cases and controversies in which a plaintiff has a concrete stake. Standing ensures that each plaintiff has “[t]he requisite personal interest ... at the commencement of the litigation,” while mootness ensures that this interest “con-tinuéis] throughout” the duration of the case. Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks omitted).
To establish constitutional standing, “a plaintiff must show (1) it has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The plaintiff has the burden of demonstrating that these requirements are met at the “commencement of the litigation,” and must do so “separately for each form of relief sought.” Id. at 170, 184-85, 120 S.Ct. 693. In assessing standing, our primary project is to separate those with a true stake in the controversy from those asserting “the generalized interest of all citizens in constitutional governance.” Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc., 454 U.S. 464, 483, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 223 n.13, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).
Mootness “ensures that the litigant’s interest in the outcome continues to exist throughout the life of the lawsuit.” Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993). The party asserting that a claim is moot must show that it is “absolutely clear that the allegedly wrongful behavior [is] not reasonably [ ] expected to recur.” Laidlaw, 528 U.S. at 189, 120 S.Ct. 693. “[A] court will not dismiss a case as moot,” even if the nature of the injury changes during the lawsuit, if “secondary or ‘collateral’ injuries survive after resolution of the primary injury.” Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 384 (3d Cir. 2001); Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) (“[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief.”).
We first address what a plaintiff must show to have standing to challenge a religious display under the Establishment Clause and then examine whether standing exists to pursue the remedies sought and whether the Appellants’ conduct moots the claim for relief.
B
Nearly every court of appeals has held that standing in this context “requires only direct and unwelcome personal contact with the alleged establishment of religion.” [5] Red River Freethinkers v. City of *477 Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012); see also Cooper v. U.S. Postal Serv., 577 F.3d 479, 491 (2d Cir. 2009) (plaintiff who had “direct contact with religious displays that were made a part of his experience using the postal facility nearest his home” had standing); Vasquez, 487 F.3d at 1253 (“[Sjpiritual harm resulting from unwelcome direct contact with an allegedly offensive religious ... symbol ... suffices to confer Article III standing.”); Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook, 375 F.3d 484, 490 (6th Cir. 2004) (plaintiff had standing to challenge display in courtroom because he had “direct, unwelcome contact with the Ten Commandments display”); Suhre v. Haywood Cty., 131 F.3d 1083, 1086 (4th Cir. 1997) (“[Direct contact with an unwelcome religious exercise or display works a personal injury distinct from and in addition to each citizen’s general grievance against unconstitutional government conduct.”); Foremaster v. City of St. George, 882 F.2d 1485, 1490 (10th Cir. 1989) (“allegations of direct, personal contact” with religious icon in city logo gave rise to standing); Saladin v. City of Milledgeville, 812 F.2d 687, 692 (11th Cir. 1987) (standing in Establishment Clause cases is established by “direct contact with the offensive conduct”).
The District Court appeared to read the direct, unwelcome contact standard to include a frequency requirement. This is incorrect. First, the Supreme Court has made clear that “an identifiable trifle is enough for standing to fight out a question of principle.” United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); see also Saladin, 812 F.2d at 691 (citing SCRAP and concluding that “[t]here is no minimum quantitative limit required to show injury”); Am. Civil Liberties Union of Ga. v. Rabun Cty. Chamber of Commerce, Inc., 698 F.2d 1098, 1108 (11th Cir. 1983) (concluding that “the Supreme Court has made it clear that no minimum quantitative limit is required to establish injury under either a constitutional or prudential analysis”). Requiring frequent contact with the display to obtain standing ig inconsistent with the concept that a single “trifle” is sufficient to establish standing.
Second, while many courts have noted the frequency of a plaintiffs actual or expected contact with a religious display, the same courts do not include frequency as a necessary element when stating the applicable rule. See, e.g., Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach, 778 F.3d 390, 394 (2d Cir. 2015) (holding that residents had standing to challenge the erection of a Jewish ritual enclosure of a geographic area which they would “confront[ ] ... on a daily basis,” but stating that standing is found in the religious display context when a plaintiff alleges that he “was made uncomfortable by direct contact with religious displays” (quoting Cooper, 577 F.3d at 491)); Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese, 633 F.3d 424, 429 (6th Cir. 2011) (noting that plaintiff had “frequently and routinely” come into contact with the offensive display, but saying that “ ‘direct and unwelcome’ contact with the contested object demonstrates psychological injury in fact sufficient to confer standing”); Vasquez, 487 F.3d at 1252-53 (noting that plaintiffs contact with display “was frequent and regular, not sporadic and remote,” but describing majority test among the courts of appeals as “unwelcome direct contact with” a religious dis *478 play); Suhre, 131 F.3d at 1088, 1090 (holding that plaintiff who came into contact with Ten Commandments display in courtroom during “numerous suits” he was involved with and attended public meetings there had standing, but referring to “direct unwelcome contact with a religious display” as the required standard). For instance, in Pelphrey v. Cobb County, 547 F.3d 1263, 1279-80 (11th Cir.2008), the court noted that a plaintiff challenging a religious invocation at planning commission meetings had attended three meetings in person and viewed many on the internet, but concluded that standing existed because “the record allow[ed] an inference that [the plaintiff] observed a meeting,” not because he did so frequently or regularly. Id. at 1280.
In other cases, courts do not describe contact with a display as particularly frequent, or omit frequency from the discussion completely. See, e.g., Red River, 679 F.3d at 1023-24 (not discussing frequency •with which plaintiffs came into contact with display); Am. Atheists, Inc. v. Davenport, 637 F.3d 1095, 1113 (10th Cir.2010) (same); Books v. Elkhart Cty., 401 F.3d 857, 862 (7th Cir.2005) (plaintiff would need to pass display “at least once a year in order to pick up a form” as well as if he visited two County departments); Doe v. Cty. of Montgomery, 41 F.3d 1156, 1158 (7th Cir.1994) (plaintiff came into contact with religious display on a few occasions when registering to vote, obtaining absentee ballots, and performing jury duty). While frequent contact with a religious display may strengthen the case for standing, it is not required to establish standing. But see Green v. Haskell Cty. Bd. of Comm’rs, 568 F.3d 784, 793 (10th Cir.2009) (reciting test that “[allegations of personal contact with a state-sponsored image suffice to demonstrate ... direct injury” but proceeding to compare the frequency of contact with that in other cases (internal quotation marks omitted)).[6]
While frequent contact with a display is not a requirement for standing, a passerby who is not a member of the community, and who faces no risk of future contact,[7] may not have an injury in fact sufficient to confer standing. This is because standing requires that the plaintiff has a concrete grievance that is particularized to him and that the plaintiff is not one simply expressing generalized disagreement with activities in a place in which he has no connection. See Valley Forge, 454 U.S. at 482-83, 102 S.Ct. 752; see also Moss v. Spartanburg Cty. Sch. Dist. Seven, 683 F.3d 599, 605 (4th Cir.2012); Washegesic v. Bloomingdale Pub. Sch., 33 F.3d 679, 683 (6th Cir.1994) (practices in one’s “own community may create a larger psychological wound than someplace we are just passing through”); Saladin, 812 F.2d at 693 (plaintiffs “have more than an abstract interest” where they are “part of [the relevant community] and are directly affronted” by a religious display).
Moreover, an individual objecting to a religious display on government property or religious activity that is government-sponsored need not change her behavior to avoid contact with the display to establish standing. Suhre, 131 F.3d at 1088 (“In evaluating standing, the Supreme *479 Court has never required that Establishment Clause plaintiffs take affirmative steps to avoid contact with challenged displays or religious exercises.”). Rather, standing exists either when plaintiffs “were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them.” Valley Forge, 454 U.S. at 486 n.22, 102 S.Ct. 752. Consistent with this approach, the Supreme Court has decided religious display cases in which plaintiffs had come into contact with the displays but not altered their conduct, without noting any concern about their standing to sue. See Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (challenging a holiday display outside county courthouse); Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (challenging a holiday display in a city’s shopping district).
We agree with the view that one should not be required to avoid an unwelcome object or activity to have standing to bring an Establishment Clause claim.[8] See, e.g., Red River, 679 F.3d at 1023; Books, 401 F.3d at 857, 861; Foremaster, 882 F.2d at 1490; Suhre, 131 F.3d at 1088. In the religious display context, the allegedly unwelcome activity generally takes place on government property or at a government-sponsored event. A community member should not be forced to forgo a government service to preserve his or her ability to challenge an allegedly unconstitutional religious display or activity.[9] While altering one’s behavior to avoid something may demonstrate that the thing avoided is unwelcome, altered conduct is not a prerequisite for obtaining standing in this context.[10]
Thus, a community member like Schaub may establish standing by showing direct, unwelcome contact with the allegedly offending object or event, regardless of whether such contact is infrequent or she does not alter her behavior to avoid it.[11]
*480 C
A plaintiff seeking relief must show he or she has standing for each remedy sought. Laidlaw, 528 U.S. at 184, 120 S.Ct. 693. Thus, we first examine Schaub and Doe l’s standing to secure nominal damages for injury from past direct, unwelcome contact with the monument. Schaub has cited three specific occasions on which she viewed, and hence had direct contact with, the monument. Whether Schaub read the monument each time she saw it, or ever fully read its text, is immaterial since it is the monument’s overall representation of the Ten Commandments to which Schaub objects, as she sees it as conveying a religious message. See Saladin, 812 F.2d at 691-92 (holding that rendering the term “Christianity” as part of a city seal, to be illegible did not prevent residents who knew what it signified from being reminded of it “every time they [were] confronted with” it). Schaub’s allegations that the monument “signals that [she is] an outsider because [she] do[es] not follow the particular religion or god that the monument endorses,” App. 679, and that her “stomach turned” when she encountered it,[12] App. 824, are sufficient to demonstrate that her contact with the monument was unwelcome. Thus, Schaub has standing to pursue a nominal damages claim.
Doe 1, on the other hand, explicitly stated that she did not understand the monument when she encountered it prior to the lawsuit because she was too young, “never read it or paid attention to it,” and never told anyone that it bothered her. App. 684. In fact, it is not clear from the record that Doe 1 read or understood the monument until after the suit was filed. See Wall, 246 F.3d at 266 (concluding that plaintiffs lacked standing because they, failed to describe their reaction to a religious display and because it was “unclear whether” one plaintiff observed it “in order to describe [it] for this litigation” or while going about ordinary business). As to Doe l’s comment that she later viewed the monument as conveying that the school wanted students to subscribe to religious beliefs, the record does not show that she had that view at the time the complaint was filed. Thus, we cannot say the District Court erred in concluding that Doe 1 lacks standing.
D
We next examine whether Schaub and Doe 1 have standing to pursue *481 prospective injunctive relief. At the time the complaint was filed, Schaub believed that Doe 1 would matriculate at the high school and come into daily contact with the monument. While the record does not establish that Doe 1 herself dreaded contact with the monument, she asserted that her mother, Schaub, planned to drive her to school, and thus would have contact with the monument. Moreover, as Doe l’s parent, she has an interest in guiding her child’s religious upbringing and has standing to challenge actions that seek to “establish a religious preference affecting” her child. Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cty., 766 F.2d 1391, 1398 (10th Cir. 1985) (internal quotation marks and citation omitted). Thus, Schaub has standing to seek injunctive relief.
Schaub’s decision not to send Doe 1 to the high school does not deprive Schaub of standing to seek injunctive relief. First, injunctive relief still has the capacity to redress her grievances because Doe 1 could return to the high school if the monument were removed.[13] Schaub therefore has a concrete interest in the resolution of her request for injunctive relief. Second, the “principles of standing [do not] require [a] plaintiffi ] to remain in a hostile environment to enforce [her] constitutional rights.” Id. at 1399 (no bar to injunctive relief where parents who sought to end various religious practices at a school chose to move their children to another school during the pendency of the lawsuit). For these reasons, Schaub has standing to pursue injunctive relief.[14]
The decision to remove Doe 1 from the high school does not render Schaub’s claim for injunctive relief moot. As previously stated, Schaub was not required to continue suffering the exact injury described in the complaint to maintain her entitlement to seek relief. See Chong, 264 F.3d at 384; Cantrell, 241 F.3d at 678. “While there may be cases in which an injunction would be ineffective because the injurious conduct has ceased, here Schaub represents that she intends to enroll Doe 1 at the high school if the monument is removed and that Doe 1 wishes to take courses at the adjoining career center, demonstrating that an injunction, if granted, could provide relief. Thus, the request for an injunction is not moot.
E
Finally, we address FFRF’s standing. FFRF’s standing is predicated wholly on the standing of its alleged member, Schaub. Because we conclude Schaub has standing, we will remand to the District Court to determine whether she was a member of FFRF at the time the complaint was filed and if FFRF thereby has organizational standing to pursue either injunctive relief or nominal damages.
Ill
For the foregoing reasons, we will affirm the District Court’s grant of summary *482 judgment with respect to Doe l’s claims for nominal damages, reverse and remand for further proceedings concerning Schaub’s claims, and vacate and remand for consideration of FFRF’s standing and further proceedings concerning FFRF’s claims if the District Court finds FFRF has standing.[15]

. Schaub was questioned about how she became a member of FFRF during her April 2014 deposition, and was asked "how long are you a member for?” to which she answered, "[t]his year.” App. 834. The questioner then said “[i]s that all?” and Schaub responded "[y]es, I believe my membership expires in 2015.” App. 834. The District used this exchange to conclude that Schaub was not a member at the time the lawsuit was filed in 2012. The only evidence to support the claim that Schaub was a member when the suit was filed is her December 2014 declaration, which stated that she has "been a member of FFRF since August 2012.” App. 734.

. While the complaint alleges Doe 1 has "felt anxiety over the proposition that the religious monument will” remain at the school, Compl. at 6-7, ECF No. 1, the record shows that Doe 1 did not state any negative feelings about the monument.

. Nominal damages are a type of damages awarded for the violation of a right "without proof of actual injury.” Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

. The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise de novo review over legal conclusions concerning standing and mootness. Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015) (standing); Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 382 (3d Cir. 1999) (mootness).
The District Court, rather than a jury, resolves factual issues relevant to determining whether a party has standing. See Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (relying on the district court’s factual findings from its evidentiary hearing concerning standing issues); N.J. Coal. of Rooming &
Boarding House Owners v. Mayor & Council of Asbury Park, 152 F.3d 217, 220 (3d Cir. 1998) (remanding to the district court for "further factual development and a new determination by the district court regarding plaintiffs' standing” because of "insufficient factual findings for us to review its standing determination.”). We review those findings for clear error. Perelman, 793 F.3d at 373.
A plaintiff bears the burden of showing standing in the "manner and degree of evidence required at the [particular] stage[] of the litigation.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, “[a]t the summary judgment stage, the plaintiff must produce evidence [of standing] in the form of Fed. R. *476 Civ. P. 56[] affidavits or documents....” ACLU-NJ v. Twp. of Wall, 246 F.3d 258, 261 (3d Cir. 2001) (quotations and citations omitted).

. Our Court has issued rulings in cases concerning religious displays that are consistent with the view that direct, unwelcome contact suffices to confer standing. See Modrovich v. Allegheny Cty., 385 F.3d 397, 399 (3d Cir. 2004) (not mentioning issue of standing, but noting in passing that plaintiffs had alleged ‘‘regular, direct and unwelcome” contact with religious display); Freethought Soc'y of Greater Phila. v. Chester Cty., 334 F.3d 247, 255 n.3 (3d Cir. 2003) (dismissing in a footnote the argument that plaintiffs who viewed reli *477 gious plaque at courthouse occasionally while conducting official business there lacked standing as "not ... convincing”).

. Imposing a frequency requirement would also be tantamount to endorsing the notion that a plaintiff must cause himself increased injury to bring a claim.

. The risk of future contact is only relevant to the question of whether there is standing to seek injunctive and declaratory relief, and it does not factor into our analysis of whether there is standing to pursue nominal damages. See City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

. As the School District points out, the Court of Appeals for the Seventh Circuit suggested in Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463 (7th Cir. 1988) and Am. Civil Liberties Union of Ill. v. City of St. Charles, 794 F.2d 265, 268-69 (7th Cir. 1986) that altered conduct was required to bring an establishment clause claim. More recent Seventh Circuit cases, however, have retreated from this view, see Books, 401 F.3d at 857, 861 (noting that other Seventh Circuit cases have found standing without altered conduct).

. Similarly, while many cases involve plaintiffs availing themselves of needed government services or fulfilling civic obligations, see, e.g., Cooper, 577 F.3d at 490; Books, 401 F.3d at 861; Doe, 41 F.3d at 1161, there is no requirement that a plaintiff do so, or that her contact with the display be unavoidable. Furthermore, attending events at a public school, whether or not one is a student, is plainly an interest that can give rise to the requisite injury for standing purposes. See Washegesic, 33 F.3d at 682 (religious painting hung at a public school did "not affect students only” but rather, "a member of the public would have standing if she attended events in the gymnasium”); Jager v. Douglas Cty. Sch. Dist., 862 F.2d 824, 826 n.1 (11th Cir. 1989) (former student and his father had standing to challenge prayer at football games "as people who attend the football games”).

. See, e.g., Moss, 683 F.3d at 606-07 (discussing plaintiffs’ change of conduct as one of several reasons they demonstrated sufficient injury); Cooper, 577 F.3d at 490 (noting that that "the discomfort [the plaintiff] suffered when he viewed the religious displays ... was so great that he was inclined to drive to another postal unit” as one reason that his injury was of sufficient seriousness).

. A parent sending his or her child to a public school in the community also has standing to complain about present and future religious displays or activities at the child's school. Lee v. Weisman, 505 U.S. 577, 584, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (the father of a high school freshman had Article III standing to challenge the inclusion *480 of a prayer during his daughter's anticipated high school graduation ceremony years later); Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 224 n.9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (both children and their parents had standing to challenge bible reading in their public school); see also Valley Forge, 454 U.S. at 486 n.22, 102 S.Ct. 752 (characterizing Schempp as supporting standing "because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them”); Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 217 n.2 (3d Cir. 2003) ("We do note that parents independently have standing to bring constitutional challenges to the conditions in their children’s schools."); Brody ex rel. Sugzdinis v. Spang, 957 F.2d 1108, 1114 (3d Cir. 1992) ("parents independently have standing to bring constitutional challenges to the conditions in their children’s schools”); Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cty., 766 F.2d 1391, 1398 (10th Cir. 1985) (agreeing with district court that parents may "on their own behalf, assert that the state is unconstitutionally acting to establish a religious preference affecting their children” (internal quotation marks omitted)).

. "[WJhile those injuries are largely emotional, we must presume they are sincerely felt.” Red River, 679 F.3d at 1024 (noting that there is no basis under Article Ill’s case-or-controversy requirement for treating intangible emotional harms differently from more readily quantifiable harms).

. Schaub also alleges that Doe 1 has expressed an interest in attending classes at the Northern Westmoreland Career & Technology Center, which is located on the high school campus, but that Schaub is concerned doing so would bring Doe 1 in contact with the monument.

. Since we have concluded Schaub has standing to seek equitable relief, we need not address the standing of the other plaintiffs to pursue injunctive relief. Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls, 536 U.S. 822, 826 n.1, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (explaining that because one party has standing, it is unnecessary to address whether the other party also has standing to challenge the school's suspicionless drug testing policy).

. The standing inquiry is not an assessment of the merits, see ASARCO Inc. v. Kadish, 490 U.S. 605, 624, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), and therefore nothing herein constitutes an opinion on the merits.