PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3581

_____

FREEDOM FROM RELIGION FOUNDATION, INC.;
STEPHEN MEHOLIC; DAVID SIMPSON;
JOHN BERRY; CANDACE WINKLER

v.

THE COUNTY OF LEHIGH,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:16-cv-04504)
District Judge: Honorable Edward G. Smith

_____

Argued September 7, 2018
Before: HARDIMAN, KRAUSE, and BIBAS, *Circuit
Judges*.

(Filed: August 8, 2019)

Marcus B. Schneider [Argued]
Steele Schneider

428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
    *Attorneys for all Plaintiff-Appellees*

Patrick C. Elliott
Freedom from Religion Foundation
10 North Henry Street
Madison, WI 53703
    *Attorney for individual Plaintiff-Appellees*

Eric S. Baxter [Argued]
Joseph C. Davis
Diana M. Verm
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036

Thomas M. Caffrey
P.O. Box A
Copley, PA 18037
    *Attorneys for Defendant-Appellant*

Richard B. Katskee
Americans United for Separation of Church & State
1310 L Street, NW, Suite 200
Washington, DC 20005
    *Attorney for Amici Religious and Civil-Liberties Organizations in Support of Appellees*

David A. Cortman
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260

Samuel S. Sadeghi
Morgan Lewis & Bockius
600 Anton Boulevard
Suite 1800
Costa Mesa, CA 92626

Jonathan A. Scruggs
Kristen K. Waggoner
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
    *Attorneys for Amicus Alliance Defending Freedom in Support of Appellant*

Michael D. Berry
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
    *Attorney for Amicus First Liberty Institute in Support of Appellant*

Gregory Dolin
University of Baltimore School of Law
1420 North Charles Street
Baltimore, MD 21201
    *Attorney for Amicus Jews for Religious Liberty in Support of Appellant*

Gregory L. Chafuen
Weil Gotshal & Manges
2001 M Street, N.W.
Suite 600

Washington, DC 20036

Thomas R. Guy
Weil Gotshal & Manges
200 Crescent Court, Suite 300
Dallas, TX 75201

Randall L. Wenger
Independence Law Center
23 North Front Street
Harrisburg, PA 17101

*Attorneys for Amici States of Alabama, Arizona, Arkansas, Colorado, Indiana, Kansas, Louisiana, Missouri, Nebraska, Ohio, Oklahoma, South Carolina, Texas, Utah, and West Virginia in Support of Appellant*

------

OPINION OF THE COURT

------

HARDIMAN, *Circuit Judge*.

For almost 75 years, the official seal of Lehigh County, Pennsylvania has included a Latin cross surrounded by nearly a dozen secular symbols of historical, patriotic, cultural, and economic significance to the community. The question presented is whether that seal violates the Establishment Clause of the First Amendment to the United States Constitution. Consistent with the Supreme Court's recent decision in *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019), we hold it does not.

I

In December 1944, the Lehigh County Board of Commissioners unanimously adopted the seal at issue and agreed to purchase a flag depicting it. Although the record contains no evidence of the three Commissioners' contemporaneous understandings of the imagery used in the seal, Commissioner Harry D. Hertzog, who designed and voted for the seal, explained two years later: "in center of Shield appears the huge cross in canary-yellow signifying Christianity and the God-fearing people which are the foundation and backbone of our County." App. 99. This appears to be the only available explanation of the cross's initial inclusion in the seal. The cross is partially obscured by a depiction of the Lehigh County Courthouse and surrounded by many other symbols representing the County's history, patriotism, culture, and economy.[1] *See infra* Appendix A.

The seal appears on County-owned property and on various government documents, as well as on the County's website, so Lehigh County residents encounter it regularly. The Freedom from Religion Foundation (FFRF) wrote to the County in November 2014 to complain about the seal and

---

[1] These include the United States and Pennsylvania flags, a red heart representing the County Seat of Allentown, a map of the County's boundaries, two books and the lamp of learning representing education, red bunting representing the clothing manufacturing industry, the Liberty Bell, a bison head representing the County Preserve and its protected hoofed animals, industrial buildings representing the County's cement and other industries, and grain silos and a cow representing agriculture. *See infra* Appendix A.

request its use be discontinued—the first such complaint in the seal's history. After a series of meetings and attempts to gather information about the seal, the Board of Commissioners voted unanimously to retain the seal in March 2015. Responding to FFRF by letter, the County stated the cross's "presence . . . on the seal among all the other items of historical significance has the secular purpose of recognizing the history of the County" and "honor[s] the original settlers of Lehigh County who were Christian." App. 310. The present-day Board did not know why the 1944 Commissioners decided to include the cross, and interpreted Hertzog's 1946 statement to mean the cross—like other symbols on the seal—represented "elements that were important to the early settlers" of Lehigh County. App. 266–67.

FFRF and four of its members who reside in Lehigh County filed this lawsuit in 2016. After both parties moved for summary judgment, the District Court denied the County's motion and granted FFRF's. It found the seal unconstitutional under the *Lemon* test as modified by the endorsement test, after asking whether the cross lacked a secular purpose and whether a reasonable observer would perceive it as an endorsement of religion. *Freedom from Religion Found., Inc. v. Cty. of Lehigh*, 2017 WL 4310247, at *9–10 (E.D. Pa. Sept. 28, 2017) (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). The District Court explained in dicta that although FFRF's claim would fail under the Establishment Clause as originally understood, the Court was obliged to apply the *Lemon*-endorsement test despite its shortcomings. The County timely appealed, but after oral argument we held the case pending resolution of *American Legion* and then asked the parties to provide supplemental briefing based on that decision. We now hold that *Lemon* does not apply to "religious references or imagery in public

6

monuments, symbols, mottos, displays, and ceremonies" like the seal. 139 S. Ct. at 2081 n.16 (plurality opinion). As the Supreme Court held in *American Legion*, such longstanding symbols benefit from "a strong presumption of constitutionality." *Id.* at 2085. And because the thin record in this case does not overcome that presumption, we will reverse the District Court's order.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We review a party's standing to sue de novo. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 266 (3d Cir. 2014). The same is true of our review of the District Court's summary judgment. *Id.* at 265.

## III

In the Establishment Clause context, "a community member . . . may establish standing by showing direct, unwelcome contact" with a government display alleged to violate the Constitution. *Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 479 (3d Cir. 2016).[2] The Supreme Court appears to adhere to this approach,

---

[2] The County argues *New Kensington* is at odds with *Americans United for Separation of Church & State v. Reagan*, 786 F.2d 194 (3d Cir. 1986), and *Town of Greece v. Galloway*, 572 U.S. 565 (2014). Neither case requires us to reconsider Establishment Clause standing here. The *Reagan* plaintiffs asserted a generalized, stigmatic injury based on diplomatic recognition of the Vatican and related congressional funding,

resolving many offended-observer standing cases on the merits without addressing standing. *See, e.g.*, *Am. Legion*, 139 S. Ct. at 2090; *McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844 (2005); *Van Orden v. Perry*, 545 U.S. 677 (2005). *But see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings of this sort . . . have no precedential effect."). We will not abrogate *New Kensington*'s relaxed standard for Establishment Clause plaintiffs and instead leave it to the Supreme Court—or this Court sitting en banc—to determine whether to discard it.[3]

The County does not dispute that the individual Plaintiffs here have experienced a variety of direct and unwelcome contacts with the seal. For example, Plaintiffs Berry, Meholic, Simpson, and Winkler have encountered the seal as displayed in the County Commissioners' public meeting room, on the County website, in the County Sheriff's Office, on real estate tax bills, when reporting to the County courthouse for jury duty, on County flags placed throughout the County, and on County-owned vehicles. The individual plaintiffs are also residents of the relevant community (Lehigh

---

as opposed to direct and unwelcome contact. *Reagan*, 786 F.2d at 200–01. And the portions of *Town of Greece* the County cites involve substantive Establishment Clause analysis, not threshold issues of standing.

[3] *See generally Am. Legion*, 139 S. Ct. at 2098–103 (Gorsuch, J., concurring in judgment) (arguing the concept of offended-observer standing is inconsistent with Article III's standing requirements); *City of Edmond v. Robinson*, 517 U.S. 1201, 1201–03 (1996) (Rehnquist, C.J., dissenting from the denial of certiorari) (arguing for the Court to resolve the question of offended-observer standing).

County). *See New Kensington*, 832 F.3d at 478. For these reasons, we hold they have standing to challenge the seal under the Establishment Clause.

IV

The Establishment Clause precludes Congress from passing any law "respecting an establishment of religion." U.S. CONST. amend. I. The original public understanding of "establishment" informs the Supreme Court's more recent focus on evaluating challenges to government action in the context of historical practices and understandings. *See Am. Legion*, 139 S. Ct. at 2074; *Town of Greece v. Galloway*, 572 U.S. 565, 576–77 (2014); *Van Orden*, 545 U.S. at 682–84 (plurality opinion); *id.* at 702–04 (Breyer, J., concurring in judgment).

Before *American Legion*, the *Lemon*-endorsement test directed courts to divine the intent behind challenged government action or to ascertain the "reasonable observer's" perception of that action.[4] That's not to say the test guided the Supreme Court itself. Well before *American Legion*, the Court

---

[4] *Lemon*'s three prongs are (1) secular legislative purpose, (2) principal or primary effect that neither advances nor inhibits religion, and (3) lack of excessive government entanglement with religion. 403 U.S. at 612–13. The endorsement test modified *Lemon* by asking whether a "reasonable observer familiar with the history and context of the display would perceive the display as a government endorsement of religion." *Modrovich v. Allegheny Cty.*, 385 F.3d 397, 401 (3d Cir. 2004) (citing *Lynch v. Donnelly*, 465 U.S. 668, 687, 692 (1984) (O'Connor, J., concurring)).

and individual Justices repeatedly indicated the test was not binding. *See, e.g.*, *Van Orden*, 545 U.S. at 699–700 (Breyer, J., concurring in judgment) (observing that the Court was unable to adopt a "single mechanical formula that can accurately draw the constitutional line in every case" (citation omitted)); *Lynch v. Donnelly*, 465 U.S. 668, 679 (1984) (eschewing "any single test or criterion in this sensitive area" (citations omitted)); *Hunt v. McNair*, 413 U.S. 734, 741 (1973) (stating *Lemon* provides "no more than helpful signposts"). Sometimes the Court ignored the test altogether. *See, e.g.*, *Town of Greece*, 572 U.S. 565 (omitting any mention of *Lemon*); *Van Orden*, 545 U.S. 677 (no reliance on *Lemon* in either the plurality or Justice Breyer's concurrence); *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 565 U.S. 994 (2011) (Thomas, J., dissenting from the denial of certiorari) (collecting more cases that ignore *Lemon*). Although *American Legion* did not exorcise what Justice Scalia likened to a "ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried," *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring), the Court did make clear that the *Lemon*-endorsement framework does not apply to our evaluation of the Lehigh County seal.

*American Legion* confirms that *Lemon* does not apply to "religious references or imagery in public monuments, symbols, mottos, displays, and ceremonies." 139 S. Ct. at 2081–82 & n.16 (plurality opinion); *see also id.* at 2097 (Thomas, J., concurring in judgment) (agreeing that *Lemon* does not apply to such cases); *id.* at 2102 (Gorsuch, J., concurring in judgment) (same). Instead, informed by four considerations, the Court adopted "a strong presumption of constitutionality" for "established, religiously expressive

10

monuments, symbols, and practices." *Id.* at 2085. Those considerations include that: (1) identifying such symbols' original purpose or purposes is often difficult; (2) the original purposes may multiply over time, especially through decisions to retain a symbol; (3) the message conveyed by the symbol may change over time; and (4) removing a longstanding symbol imbued with "familiarity and historical significance" may appear hostile to religion. *Id.* at 2082–85. And the only ways the Court suggested challengers might be able to overcome the presumption of constitutionality would be to demonstrate discriminatory intent in the decision to maintain a design or disrespect based on religion in the challenged design itself. *See id.* at 2074, 2089.

In its supplemental brief filed after *American Legion* was decided, FFRF makes two points. It argues that the facts of this case show *American Legion*'s presumption does not apply and, even if it did, the presumption is overcome. Neither argument proves availing.

On the first point, *American Legion* held that the presumption applies to longstanding symbols just like the Lehigh County seal. What's more, the Supreme Court's four considerations for applying a presumption of constitutionality to the Bladensburg Peace Cross apply equally here. For these reasons, we begin our evaluation of the Lehigh County seal with "a strong presumption of constitutionality" for this longstanding symbol. *Id.* at 2085.

And on the second, it's clear on the record in this case that Plaintiffs have not overcome the presumption. The evidence does not show the sort of "discriminatory intent" in maintaining a symbol or "deliberate[] disrespect[]" in a design itself that *American Legion* suggested could overcome the

11

presumption. *See id.* at 2074, 2089. So the seal is plainly constitutional under the most recent frameworks the Supreme Court has used to evaluate similar, established government symbols, monuments, and practices with religious elements.[5]

A

To begin with, the notion that the presumption of constitutionality does not apply to the Lehigh County seal is a nonstarter. In *American Legion*, the Supreme Court held that the presumption applies to all "established, religiously expressive monuments, symbols, and practices." *Id.* at 2085. Lehigh County's seal checks those boxes. It was adopted almost 75 years ago, so it is established. It depicts a Latin cross, so it is religiously expressive. And it represents the County and its government, so it is a symbol. Satisfying these three

_____

[5] We therefore distinguish this case from our recent Establishment Clause decisions in *Doe v. Indian River School District*, 653 F.3d 256, 282–83 (3d Cir. 2011), and *Stratechuk v. Board of Education, South Orange-Maplewood School District*, 587 F.3d 597, 604–06 (3d Cir. 2009). Both involved the public-school context, not longstanding government symbols, and both predate *American Legion* and *Town of Greece*. We further recognize that *American Legion* abrogates the reasoning (*i.e.*, application of *Lemon*) in both *Modrovich*, 385 F.3d 397, and *Freethought Society of Greater Philadelphia v. Chester County*, 334 F.3d 247 (3d Cir. 2003). Neither case—decided before *American Legion*, *Town of Greece*, and *Van Orden*—binds our decision here because of that intervening Supreme Court precedent. *See In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008).

conditions triggers the "strong presumption of constitutionality." *Id.*

Moreover, although none is required for the presumption to apply, all four of *American Legion*'s considerations further confirm the presumption's applicability:

*First*, 75 years after the seal's adoption, the only available evidence of original purpose is Commissioner Hertzog's statement made two years after the County adopted the seal. Discerning the actual purpose of the seal's adoption is made more difficult not only by the passage of time, but also because Hertzog was just one of three commissioners. These problems highlight why the Supreme Court in *American Legion* expressed skepticism about the ability of courts to determine the original purposes of longstanding symbols. *See id.* at 2082.

Context also matters. Where a display includes many other monuments or symbols, the undeniably religious symbolism of one monument may take on a "dual significance, partaking of both religion and government." *Van Orden*, 545 U.S. at 691–92 (plurality opinion); *see id.* at 702 (Breyer, J., concurring in judgment); *see also Am. Legion*, 139 S. Ct. at 2077–78, 2089 (finding the Bladensburg Peace Cross's own secular elements and situation among other war memorials provided greater context, even though the closest was 200 feet away).

*Second* and *third*, the seal's original purposes and messages—like those of the Bladensburg Peace Cross—have likely multiplied and changed over time. Courts are not to focus solely on the religious component in challenged government displays; they should consider the overall message

conveyed and the broader context in which the display appears. *See Am. Legion*, 139 S. Ct. at 2074–78, 2089–90; *Van Orden*, 545 U.S. at 700 (Breyer, J., concurring in judgment). Religious symbols within such a display "can become embedded features of a community's landscape and identity," valued for more than just "their religious roots." *Am. Legion*, 139 S. Ct. at 2084. "Familiarity itself can become a reason for preservation." *Id.* (citing Maryland's flag, "which has included two crosses since 1904," and religious place names); *see id.* at 2083 ("Even if the original purpose of a monument was infused with religion, the passage of time may obscure that sentiment. . . . [A] community may preserve such monuments, symbols, and practices for the sake of their historical significance or their place in a common cultural heritage."). And such symbols may speak of the community that adopted them, representing what people "felt at the time and how they chose to express their sentiments," including acknowledgement of "the centrality of faith" to those the symbol represented. *Id.* at 2086, 2089. All this explains why the presumption of constitutionality may control even where there is direct evidence of religious motivation by some officials involved in adopting, designing, and dedicating the symbol. *Cf. id.* at 2076–77 (noting the presence of such historical evidence, but nevertheless rejecting an Establishment Clause challenge). Those purposes may multiply, and those messages may change, over time.

The Latin cross at issue here no doubt carries religious significance. *See id.* at 2093–94 (Kavanaugh, J., concurring). And its designer—who also voted for its adoption as a Commissioner—said that significance motivated him, at least in part, to include it in the County seal. But more than seven decades after its adoption, the seal has become a familiar, embedded feature of Lehigh County, attaining a broader

14

meaning than any one of its many symbols. The County recognized this "historical significance" and the seal's representation of "elements that were important to the early settlers" of Lehigh County in its 2015 decision to retain the seal. App. 266–67. The County also noted the cross "honor[s] the original settlers of Lehigh County who were Christian." App. 310. So the seal reflects both what its initial adopters "felt at the time" and what those who retained it believed just a few years ago. *Am. Legion*, 139 S. Ct. at 2089.

Although it's undeniably the focal point of the Lehigh County seal, the Latin cross does not stand alone. *See infra* Appendix A. It appears behind a depiction of the county courthouse and is surrounded by nearly a dozen other symbols representing various aspects of Lehigh County. *See supra* note 1. Whether historical, patriotic, cultural, or economic, they are all secular symbols. The seal as a whole therefore "suggests little or nothing of the sacred," even though the Latin cross alone has undeniably religious significance. *Van Orden*, 545 U.S. at 700–01, 702 (Breyer, J., concurring in judgment). In short, the seal as a whole falls well short of establishing a religion. *See Lynch*, 465 U.S. at 686.

*Finally*, history also plays a significant role. *See Town of Greece*, 572 U.S. at 576 ("[T]he Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" (quoting *Cty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 670 (1989) (Kennedy, J., concurring in the judgment in part and dissenting in part))); *Van Orden*, 545 U.S. at 702 (Breyer, J., concurring in judgment) (describing the newly contested display's unchallenged presence for 40 years as "determinative" that the "monument conveys a predominantly secular message"). A practice's fit within our Nation's public traditions may confirm

its constitutionality. *See Town of Greece*, 572 U.S. at 577. The 94-year, challenge-free history of the Bladensburg Peace Cross (including over 50 years of ownership by the government) also entitled it to a "strong presumption of constitutionality." *Am. Legion*, 139 S. Ct. at 2085. So too here.

The Lehigh County seal fits comfortably within a long tradition of State and municipal seals and flags throughout our Republic that include religious symbols or mottos, which further confirms its constitutionality.[6] *See Am. Legion*, 139 S. Ct. at 2084. It also abided over 70 years without complaint—and no evidence suggests this was "due to a climate of intimidation." *Van Orden*, 545 U.S. at 702 (Breyer, J., concurring in judgment). So the record suggests, "more strongly than can any set of formulaic tests[,] that few . . . are likely to have understood the [cross's inclusion] as amounting . . . to a government effort to favor a particular religious sect." *Id.*

Requiring the cross's extirpation, on the other hand, may very well exhibit "a hostility toward religion that has no place in our Establishment Clause traditions," inviting disputes over similar longstanding symbols nationwide. *Id.* at 704. Albeit in dicta, the *American Legion* Court disapproved of eradicating religiously inspired places, symbols, and mottos—

---

[6] FFRF argues we may not consider some of the County's evidence of certain symbols' histories and purposes, but we note the prevalence of undoubtedly religious symbols, many of them crosses, in such contexts for quite some time. *See, e.g.*, MD. CODE ANN., GEN. PROVIS. § 7-202(c) (2014). And the Supreme Court has as well. *Am. Legion*, 139 S. Ct. at 2084 (highlighting Maryland's flag).

including Lehigh County's own Bethlehem, Pennsylvania. *See Am. Legion*, 139 S. Ct. at 2084 (noting that religion "undoubtedly motivated" namers of places like Bethlehem and Las Cruces, New Mexico, as well as designers of symbols like Maryland's state flag and mottos like Arizona's "*Ditat Deus*" ("God enriches")); *id.* at 2087 (explaining that courts changing the names of cities like San Diego or Los Angeles because of their religious origins would convey hostility toward religion). Consistent with the Supreme Court's admonition on this score, we too decline to invite such dissension.

B

FFRF's fallback argument is that it has overcome the presumption of constitutionality. The Supreme Court suggested that challengers could overcome the presumption by demonstrating a "discriminatory intent in the selection of the design of the memorial or the decision of a [government body] to maintain it." *Id.* at 2074. The Court also focused on whether the monument was designed or built to "deliberately disrespect[]" Jewish, Catholic, or black soldiers. *Id.* at 2089.

Here, FFRF tries in vain to show that the seal deliberately disrespects members of other faiths. It focuses on the statement Commissioner Hertzog made two years after the seal was created. But his statement that "Christianity and the God-fearing people . . . are the foundation and backbone of our County," App. 99, does not, under *American Legion*, doom the cross's inclusion in perpetuity, because "no matter what the original purpose[] for the [adoption of a symbol], a community may wish to preserve it for very different reasons." *Am. Legion*, 139 S. Ct. at 2085. Here, the Board's intent in retaining the seal—to continue "recognizing the history of the County," App. 310—was plainly non-discriminatory. Without evidence

of "discriminatory intent" in the County's recent decision to maintain the seal or "deliberate[] disrespect[]" in the seal's design itself, the record compels the conclusion that FFRF and its members have not overcome *American Legion*'s "strong presumption of constitutionality." *Id.* at 2074, 2089.

\* \* \*

Our task turns on "the ability and willingness to distinguish between real threat and mere shadow." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 308 (1963) (Goldberg, J., concurring). The Establishment Clause's original public meaning and the Court's most recent interpretation of it make two things clear: the *Lemon*-endorsement test does not apply to Lehigh County's seal, and this 75-year-old seal casts only that mere shadow. "It has become part of the community." *Am. Legion*, 139 S. Ct. at 2089. And that community can retain or remove it in keeping with the First Amendment. *See id.* at 2094 (Kavanaugh, J., concurring). Accordingly, we will reverse the judgment of the District Court.

APPENDIX A



